### APPEAL OF CRAMER-KRASSELT CO.

Docket No. 3416.   Submitted October 13, 1925.   Decided January 19, 1926.

In the absence of proof of expenditures over a period of years in the establishment of a business, together with the nature of the expenditures, all of which were charged to expense, no determination of the value of good will which might be included in invested capital can be made.

*Carl B. Rix, Esq.*, for the taxpayer.
*Thomas P. Dudley, Jr., Esq.*, for the Commissioner.

BEFORE JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of deficiencies in income and profits tax for the calendar years 1919 and 1920 in the amounts of $103.16 and $5,663.46, respectively, arising from the action of the Commissioner in disallowing, as invested capital, good will in the amount of $50,000.

### FINDINGS OF FACT.

Taxpayer is an advertising agency incorporated under the laws of the State of Wisconsin, with principal office at Milwaukee. It was incorporated in 1898, succeeding a partnership formed in 1895.

As a part of its operations, it established and conducted its own advertising, printing, and art departments for the purpose of rendering a complete advertising service within its own establishment.

From the outset salesmen were employed whose duties were to visit prospective clients and endeavor to induce them, first, to advertise and, secondly, to conduct their advertising through the medium of the facilities offered by the taxpayer. Circular letters, mailing cards, and broadsides of considerable quantities, all setting out the necessity for, and advantage to be gained by, advertising, were prepared and distributed to the advertising public, prospective clients, and proprietors of establishments. About 1900 a house paper, or trade organ, was established under the name of Advertising Wisdom. The first issues were prepared and edited by the two sole stockholders, but later professional advertising writers were employed for that purpose. Taxpayer also purchased articles on advertising prepared by specialists in this line which it utilized for distribution with its own literature.

As a result of these intensive campaigns, taxpayer, by 1911, had succeeded in establishing itself as a well-known advertising agency and had secured the recognition of publishers throughout the United States and foreign countries, thus entitling it to receive the usual differential or commission on advertising placed with their publications accorded only to agencies of a recognized standard.

Over the period 1898 to 1911 the total salaries paid to the two stockholder officers amounted to $50,623.32. The total salaries and commissions paid to salesmen during the same period amounted to $50,124.45.

All expenses incurred and amounts paid out in building up the business have been charged as operating expenses to profit and loss. In 1904, the directors authorized the setting up on the books of a good will account in the amount of $10,000, a corresponding credit entry being made to profit and loss. Similarly, in 1906, $15,000

was added to the good will account, and, in January, 1911, a further sum of $25,000. This entry of good will on the books of account was decided upon by the directors in order to give recognition to the valuable good will which had been created through the expenditures made in the conduct of campaigns to build up the business.

Until 1912 no capital stock had been issued by the taxpayer for any purpose, the capital paid in and the earnings being credited to the accounts of the two stockholders. In March, 1912, capital stock of $100,000 was issued to the stockholders in liquidation of their accounts. This included $50,000 theretofore set up on the books as good will and credited to the individual accounts.

The Commissioner eliminated from the computation of invested capital good will which the taxpayer had included therein in the sum of $50,000, and it is from this action of the Commissioner that the taxpayer appeals.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

LITTLETON: If the taxpayer is to be permitted to include good will in its invested capital, it must result from the restoration to surplus of amounts expended in prior years for the purpose of increasing the earning capacity of its business—in acquiring something of permanent use in the business. The Commissioner eliminated the item under consideration from invested capital for two reasons: First, because of the taxpayer's failure to show that the amounts set up on the books in 1904, 1906, and 1911, as good will, bore any direct relation to the actual expenditures made in the acquisition of an asset of that character; and, secondly, that, as a matter of good accounting, it is optional with the taxpayer whether expenditures of the character here under consideration shall be charged to a capital account or treated as cost of current operations, and, since the taxpayer elected to treat them as cost of current operations concurrently with the transactions, a revision of that election can not now be permitted.

The views of the Board as they relate to the second reason for the Commissioner's action have been clearly stated in the *Appeal of Gilliam Manufacturing Co.*, 1 B. T. A. 967, and the *Appeal of Goodell-Pratt Co.*, 3 B. T. A. 30, in which we had under consideration the identical question presented by this appeal. Suffice it to say, as was said in those appeals, that a taxpayer has no option to treat capital expenditures as operating expenses and that, upon a proper showing that the expenditures sought to be restored to surplus were in fact capital expenditures, the taxpayer may make such restoration and include the amount thereof in invested capital.

However, we point out here that, in each of the above-cited appeals, the fact that the expenditures were of a capital nature and the amounts actually expended were clearly established, which is not the case in this appeal. The Board is satisfied that prior to the taxable years the taxpayer had built up a good will of considerable value in its business; however, we are not convinced from the evidence before us that the total of the amounts restored to capital in 1904, 1906, and 1911, is at all fairly representative of the expenditures actually made in the acquisition of this good will. Proof of the expenditures actually made in the building up of good will is entirely lacking. Although the taxpayer submitted proof of the salaries and commissions paid to executive officers and salesmen, there is no competent evidence before us upon which a fair apportionment thereof to capital and expenses can be predicated.